# **EXHIBIT C**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is entered into between the Plaintiffs, Rastelli Partners, LLC ("RP") and Raymond M. Rastelli, Jr. ("Ray, Jr.") (collectively, the "Plaintiffs"), the Intervenor, DF Ventures, LLC ("Daymond") and the Defendants, FOFBakers Holding Company, LLC ("FOFBakers Holding) and James A. Baker a/k/a Al Baker ("Baker") (collectively, the "Defendants") and is effective as of the date it is ~~fully~~ executed. RP, Ray, Jr., Daymond, FOFBakers Holding and Baker are sometimes individually referred to as a "Party" and collectively as the "Parties".

## BACKGROUND

A.  On or about October 27, 2015, FOFBakers, LLC (the "Company") was formed.

B.  The members of the Company are RP, Daymond and FOFBakers Holding.

C.  The Company was intended to operate pursuant to its Limited Liability Company Operating Agreement dated November 11, 2015 (the "Operating Agreement").

D.  Pursuant to the Operating Agreement, Ray, Jr. and Baker were identified as the managers of the Company.

E.  Baker is also a member of FOFBakers Holding.

F.  Disputes arose between the Parties as to the operations of the Company.

G.  On January 29, 2019, the Plaintiffs initiated legal action against the Defendants by filing a Verified Complaint in State Court in the matter captioned <u>Rastelli Partners, LLC and Raymond Rastelli, Jr. v. FOFBakers Holding Company, LLC and James A. Baker a/k/a Al Baker, Individually,</u> Superior Court of New Jersey, Chancery Division, Gloucester County, Docket No. C-5-19 (the "State Court Action"). On February 8, 2019, the Defendants removed the State Court Action to the United States District Court for the District of New Jersey, Camden Vicinage, which bears Docket No. 1:19-cv-05124-NLH-JS (the "Federal Court Action"). The State Court Action and the Federal Court Action shall collectively be referred to herein as the "Litigation".

H.  On February 15, 2019, in response to an application for injunctive relief, the Parties entered into a Consent Order to Proceed with Mediation and Arbitration (the "Consent Order") to engage in arbitration on three (3) deadlock issues and to participate in mediation on other issues.

I.  The Parties agreed to use Retired Judge Francis J. Orlando, Jr. as the arbitrator (the "Arbitrator") and an arbitration took place on February 22, 2019 on the three (3) deadlock issues identified in Section C of the Consent Order.

J.  The Arbitrator issued, in connection with all three (3) deadlock issues, a Ruling Regarding Results of Arbitration Held on February 22, 2019 (the "Ruling").

K.  On March 14, 2019, the Parties and counsel participated in mediation with Joel Schneider, U.S.M.J.

{HL918173.1}

L.  Due to the expense, time and uncertainty of litigation, the Parties now desire to resolve the Litigation between them in accordance with the terms of this Agreement.

## AGREEMENT

In consideration of the mutual promises and covenants contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged, and intending to be legally bound, the Parties agree as follows:

1.  **Recitals**.  The Recitals set forth above are incorporated in the body of this Agreement as if fully set forth at length.

2.  **Arbitrator's Ruling**.  The Ruling shall remain in full force and effect.

3.  **Amendment to Operating Agreement**.  Contemporaneous with the execution of this Agreement, the Company, RP, Rastelli Brothers, Inc., Daymond, FOFBakers Holding, Jabezbaker, LLC, Brittani Baker, Sabrina Baker and Baker shall execute the Amendment to Operating Agreement of FOFBakers, LLC and/or (as applicable) the Addendum to the Amendment to Operating Agreement of FOFBakers, LLC attached hereto as Exhibit "A" and incorporated herein as if fully set forth at length.

4.  **Mutual Release**.  In consideration of the promises in this Agreement, each Party and Rastelli Brothers, Inc., Jabezbaker, LLC, Brittani Baker and Sabrina Baker on behalf of themselves and all persons or entities claiming by, through or under them (together, the "Releasors"), do hereby release, remise, acquit and forever discharge each other, and all related persons and entities including, but not limited to, each of its/his/her respective officers, directors, shareholders, members, employees, directors, trustees, contractors, managers, partners, servants, representatives, attorneys, accountants, agents, consultants, parent companies, subsidiaries, affiliates, successors, heirs and assigns (together, the "Releasees"), from any and all actions, causes of action, claims, suits, demands, covenants, debts, obligations, accounts, contracts, agreements, promises, controversies, liabilities, judgments, damages, losses, costs, charges, expenses, fees, attorneys' fees and executions, of every kind and nature whatsoever either at law or in equity, contingent or fixed, known or unknown, that the Releasors had, have or claim to have against the Releasees from the beginning of the world to this date including, but not limited to, all claims arising from, connected with, or relating to, the matters which are the subject of the Litigation; provided, however, that the foregoing release shall not apply to any claims (a) arising from, connected with, or relating to the alleged breach of this Agreement or (b) arising from, connected with, or relating to any claims, complaints, filings or statements either of the Defendants, Jabezbaker, LLC, Brittani Baker and/or Sabrina Baker made to any governmental or law enforcement agency but excluding the New Jersey Attorney General) about the Plaintiffs or Daymond or their businesses.  The Defendants, Jabezbaker, LLC, Brittani Baker and Sabrina Baker represent that the only claim, complaint, filing or statement made about the Plaintiffs and Daymond to any governmental or law enforcement agency was one undated letter to the New Jersey Attorney General which the Defendants, Jabezbaker, LLC, Brittani Baker and Sabrina Baker represent was subsequently withdrawn via a letter to the New Jersey Attorney General dated March 5, 2019.



5.  **Restrictions**.  Each Party and Rastelli Brothers, Inc., Jabezbaker, LLC, Brittani Baker and Sabrina Baker forever agree not to solicit, disrupt, interfere with, disparage and/or defame any other Party and such other Party's employees, vendors and customers, current and/or prospective, and those of any entity any such other Party operates, has control of or has any



{HL918173.1}                                                    2

interest in. Each Party and Rastelli Brothers, Inc., Jabezbaker, LLC, Brittani Baker and Sabrina Baker forever agree not to make any written or verbal remarks or statements (even in the form of an opinion) about any other Party to anyone including, but not limited to, any such other Party's employees, vendors and customers, current and/or prospective, and those of any entity any such other Party operates, has control of or has any interest in, that are in any way negative, disparaging or false or which could adversely impact the reputation, goodwill, credibility or value of any such other Party or entity or could discourage current and/or prospective customers from buying products from them. Except as may be necessary to comply with the rights and obligations under this Agreement, the Operating Agreement, the Amendment to Operating Agreement of FOFBakers, LLC and the Addendum to the Amendment to Operating Agreement of FOFBakers, LLC, each Party and Rastelli Brothers, Inc., Jabezbaker, LLC, Brittani Baker and Sabrina Baker forever agree not to contact any other Party's employees, current and/or prospective, and those of any entity any such other Party operates, has control of or has any interest in. Each Party and Rastelli Brothers, Inc., Jabezbaker, LLC, Brittani Baker and Sabrina Baker forever agree not to contact any other Party's vendors and customers, current and/or prospective, and those of any entity any such other Party operates, has control of or has any interest in. Each Party and Rastelli Brothers, Inc, Jabezbaker, LLC, Brittani Baker and Sabrina Baker forever agree not to interfere with any other Party's business relationships, current and/or prospective, and those of any entity any such other Party operates, has control of or has any interest in.

6. **Dismissal**.  Within ten (10) days after this Agreement is fully executed, the Parties shall dismiss all asserted claims without costs. For the avoidance of doubt, the Parties acknowledge that such dismissal does not pertain to or limit claims for alleged failure to comply with the terms of this Agreement.

7. **No Admission of Liability**. This Agreement is a compromise of the Litigation as set forth herein and shall never be treated as an admission of liability for any purpose whatsoever.

8. **Binding Effect**. This Agreement shall be for the benefit of and binding upon the Parties and their respective successors, heirs and assigns.

9. **Governing Law**. This Agreement shall be interpreted, governed and construed in accordance with the laws of the State of New Jersey.

10. **Complete Agreement**. This Agreement and any exhibits referenced herein reflect the entire understanding and agreement of the Parties and Rastelli Brothers, Inc., Jabezbaker, LLC, Brittani Baker and Sabrina Baker in connection with the matters set forth herein.

11. **Modification**. The terms of this Agreement may be amended, modified or waived only by an instrument in writing signed by all Parties and, to the extent applicable, Rastelli Brothers, Inc., Jabezbaker, LLC, Brittani Baker and Sabrina Baker.

12. **Execution of Agreement**. The Parties and Rastelli Brothers, Inc., Jabezbaker, LLC, Brittani Baker and Sabrina Baker have each consulted with their respective attorneys regarding the terms and conditions of this Agreement, have carefully read this Agreement and know and understand the contents hereof. The Parties and Rastelli Brothers, Inc., Jabezbaker, LLC, Brittani Baker and Sabrina Baker each execute this Agreement of their own free will.



13. **Counterparts**. This Agreement may be executed in multiple telecopied or original counterparts and the failure to have the signatures of all Parties and Rastelli Brothers, Inc., Jabezbaker, LLC, Brittani Baker and Sabrina Baker on a single Agreement shall not affect the validity or enforceability of any part of this Agreement.

14. **Enforcement**. The Parties and Rastelli Brothers, Inc., Jabezbaker, LLC, Brittani Baker and Sabrina Baker agree that the United States District Court for the District of New Jersey, Camden Vicinage, shall retain jurisdiction to enforce the terms of this Agreement.

15. **Third-Party Beneficiary**. The Parties and Rastelli Brothers, Inc., Jabezbaker, LLC, Brittani Baker and Sabrina Baker acknowledge that the Releasees are intended third-party beneficiaries of this Agreement with the express right to enforce the terms hereof.

*[Signature Page Follows]*



{HL918173.1}

4

**I HAVE READ THE ABOVE AGREEMENT AND UNDERSTAND ITS TERMS.**

Intending to be legally bound under the terms and conditions set forth in this Agreement, we execute this Agreement on the day and year noted below.

**RASTELLI PARTNERS, LLC**

By: _____
Name: Raymond M. Rastelli, Jr.
Title: President
Date: 9-5-19

_____
RAYMOND M. RASTELLI, JR., Individually
Date: 9-5-19

**DF VENTURES, LLC**

By: _____
Name: ~~Daymond John~~ Lawrence Fox
Title: Member/Attorney-in-fact
Date: 9-5-19

**FOFBAKERS HOLDING COMPANY, LLC**

By: _____
Name: James A. Baker
Title: CEO/President
Date: 9.5.19

_____
AL BAKER, Individually
Date: _____

ACKNOWLEDGED AND AGREED
AS TO SECTIONS 3, 4, 5, 9, 10, 11, 12, 13,
14 and 15 OF THIS AGREEMENT

**RASTELLI BROTHERS, INC.**

By: _____
Name: Raymond M. Rastelli, Jr.
Title: President
Date: 9-5-19

**JABEZ BAKER, LLC**

By: _____
Name: _____
Title: _____
Date: 9.5.19

_____ on behalf of Brittani Bak[er]
BRITTANI BAKER
Date: 9.5.19

_____ on behalf of Sabrina Bak[er]
SABRINA BAKER
Date: 9.5.19

{HL918173.1}                                    5

# EXHIBIT A

# AMENDMENT TO OPERATING AGREEMENT
# OF
# FOFBAKERS, LLC

This Amendment ("**Amendment**"), dated as of the 5th day of ~~April~~ September, 2019, is hereby intended to amend certain sections of the Operating Agreement of **FOFBAKERS LLC** (the "**Company**") dated November 11, 2015 ("**Agreement**"), among **FOFBAKERS HOLDING COMPANY, LLC** ("**Holding**"), **RASTELLI PARTNERS, LLC** ("**RP**") and **DF VENTURES, LLC** ("**Daymond**"). All signatories to this Amendment are sometimes individually referred to as a "**Party**" and collectively as "**Parties**". Capitalized terms used but not defined herein shall have the meanings given them in the Agreement.

## BACKGROUND

A dispute has arisen among the Members of the Company. The purpose of this Amendment is to resolve the dispute by amending the Agreement as provided herein.

**NOW, THEREFORE**, the undersigned Parties, in consideration of the mutual covenants and conditions herein contained, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged agree as follows:

1. The Parties hereby confirm that pursuant to Section 6.2 of the Agreement, **Jabezbaker, LLC** ("**Jabezbaker**") has granted the Company an exclusive license "allowing for the Company's exclusive use of the Patents" for the manufacture and sale of "Products" made in accordance with the methods and processes set forth in the US Patents and all improvements thereto identified in Exhibit C of the Agreement (the "**Patents**")

2. For purposes of this Amendment, the term "**Products**" means (i) any and all boneless rib products whether made in accordance with the methods and claims of the Patents or otherwise and any other products that are processed to look like boneless ribs; (ii) all products currently made under the Bubba's Q brand and any future product line extensions; and, (iii) any other products agreed to by the Parties.

3. Terms of License Grant to RBI.

(a) The Members of the Company hereby grant RP's affiliate, **Rastelli Brothers, Inc.** ("**RBI**"), the exclusive world-wide right to manufacture and sell the Products, subject to the terms set forth herein. RBI shall use its commercially reasonable best efforts to source, manufacture, produce, make or have made, market, promote, distribute, and sell and deliver the Products in the ordinary course of business (the "**RBI Grant**"). RBI shall be responsible for all costs and expenses in connection with this RBI Grant and shall perform its duties in accordance with industry standards, governmental approvals, and compliance with all applicable laws and regulations. RBI is solely responsible for all costs and expenses in connection with the RBI Grant including, but not limited to, sourcing, manufacture, production, marketing, promotion, distribution, storage, customer services, sale, delivery and collections. The RBI Grant includes the right to sub-contract or sub-license this RBI Grant in the reasonable

and ordinary course of its business to fulfill its obligations herein. RBI shall fulfill its obligations under the RBI Grant in good faith and consistent with the business interests of the Company and the terms and conditions of this Amendment.

(b) RP, RBI, and Daymond hereby agree that during the term of the RBI Grant and continuing for two (2) years after the termination of the RBI Grant, neither they nor their affiliates, agents, members or owners, shall compete with Company in the manufacturing, marketing, selling or distributing of the Products.

(c) At the option of the Company, the RBI Grant shall terminate contemporaneous with any transaction (or series of related transactions) pursuant to which the Company is acquired resulting in a change in control or upon the sale of substantially all of the Company's assets (which shall be deemed to include the sale or transfer of any material portion of the Products or Patents). RBI may continue to perform services following any such transaction for or on behalf of the acquirer provided that the terms thereof are consistent with the fair market value for the services to be performed and, as a result thereof, would not result in a reduction of the consideration received by the Company or its members from the sale. In addition, the RBI Grant may be terminated by the Company upon the institution of insolvency, receivership or bankruptcy proceedings by or against RBI or if RBI makes an assignment for the benefit of creditors of all or substantially all of its assets.

4. RBI shall pay Jabezbaker four percent (4%) of the Gross Receipts of Product sales on the first $5,000,000 of Gross Receipts of Products sold, and three percent (3%) of Gross Receipts (as defined below) on Product sales over $5,000,000, on a per annum basis (the "**Royalty Payments**"), commencing upon the execution of this Amendment. The Royalty Payments shall be paid by RBI monthly by the fifteenth (15th) of the month following the just-ended month, together with a report form substantially in the form attached hereto (the "**Report Form**"). Jabezbaker shall receive no less than a monthly payment of $8,333.33 (the "**Minimum**") only for a period of twelve months following the execution of this Amendment. Following this twelve-month period, the Minimum shall expire, and Jabezbaker shall receive the Royalty Payments based solely on Gross Receipts, as provided herein. RP and RBI shall be jointly and severally liable for RBI's obligations hereunder.

"**Gross Receipts**" means all amounts paid by a Customer (as defined below) to RBI and RBI's sublicensees from all sales of Products of every kind and nature sold, whether for cash or credit, but excluding (i) federal, state or municipal taxes or services taxes collected from Customers and paid to the appropriate taxing authority, (ii) refunds, (iii) voided customer purchases, and (iv) sales taxes collected in connection with the sales of Products.

"**Customer**" means any retail or wholesale business, supermarket (e.g., Acme), hypermarket (e.g., Walmart), fast-food chain (e.g., Subway) or other similar first receiver that purchases the Products from RBI or an RBI sublicensee, as the case may be.

By way of example, if RBI or its sublicensee Smithfield enters into an agreement with Subway and/or Walmart who pays a total of $8.00 per pound for the Product and from which RBI is paid $1.00 per pound for its portion of the process and its sublicensee, Smithfield, is paid $7.00 per pound for its portion of the process, then the amount of Gross Receipts is $8.00 per

{HL898811.16}                                    2

pound even if Subway and/or Walmart pays some or all of such purchase price directly to Smithfield.

5. Daymond and RP shall separately determine a mutually acceptable arrangement concerning payments to Daymond as a Member of Company ("**Daymond Payments**").

6. Because no operating revenues are coming into the Company, the RBI Grant, the Royalty Payments ~~and the Daymond Payments~~ set forth in this Amendment are in lieu of, and replace in their entirety, any ongoing profits, royalties, license fees, compensation or any other payments or distributions of the Company to its Members, or to any Party to the Addendum signed of even date herewith and attached hereto. Nothing herein is intended to impact the Members respective equity interests in the Company, including rights upon sale or any other liquidating event.

7. Because no operating revenues are coming into the Company, RBI shall be responsible for the payment of all current and accrued expenses of the Company. The costs of an accountant to make appropriate tax and related filings on behalf of the Company and any other prospective expenses of the Company, which the Members agree to pay on behalf of the Company, shall be paid by the Members, with contributions of funds being pro rata in accordance with each Member's Equity Interests in the Company, or as otherwise agreed by the Members.

8. **Al Baker's** ("**Al**") continuing obligations to the Company are to serve as a brand ambassador and on-air television personality, and to collaborate with the Members to market and promote the Products. Al shall further collaborate with RBI on product development concerning the Products and shall participate in product development meetings with RBI personnel. If Al contributes services, RBI shall reimburse Al for his reasonable expenses, as agreed to in advance by RBI and Al. Al shall retain the right to operate and expand his retail restaurant business with the Products. This paragraph is intended to replace Section 6.1(a) of the Operating Agreement.

9. The Parties hereto acknowledge and agree that Product Gross Receipts to the date hereof total 14,480,291 as reflected in the Schedule A Report Form, attached hereto. RBI agrees to provide all documents reasonably requested by Jabezbaker accountants concerning Schedule A. When Product Gross Receipts reach $30,000,000, and provided that the applicable Royalty Payments have been made, Jabezbaker shall irrevocably and unconditionally grant, convey, transfer and assign to the Company the Patents, and all rights attendant thereto (the "**Patent Assignment**") as provided in the Operating Agreement. Notwithstanding the foregoing, or anything else to the contrary, all Members' respective Equity Interests in the Company, and all other rights hereunder, including the RBI Grant, the Royalty Payments and the Daymond Payments shall continue following the Patent Assignment.

10. RBI shall keep true and accurate records of all Products sold under this Amendment in sufficient detail and consistent with its customary business record keeping practices, to enable the accuracy of the Report Form to be verified and to confirm the amounts of the Royalty Payments and the Daymond Payments due and owing. RBI agrees to permit the inspection or audit of the relevant records no more than once each calendar year by Jabezbaker or Holding and no more than once each calendar year by Daymond, or independent Certified

Public Accountants or other duly authorized representatives of Jabezbaker, or Daymond, as the case may be, who shall agree to maintain in strict confidence all reviewed or audited information. Any such inspection or audit shall be performed on no less than fourteen (14) days written notice, during normal business hours at RBI's place of business or through electronic transmissions of records, upon reasonable request.

In the event that an inspection or audit discloses an underpayment, within thirty (30) days after notice thereof, RBI shall pay to Jabezbaker or Daymond, as the case may be, the difference between the royalties actually paid and the royalties which should have been paid, plus interest calculated at an annual rate of five percent (5%) simple interest from the date of any such underpayment to the date of payment. If the inspection or audit discloses an overpayment, the amount of the overpayment shall be repaid to RBI within thirty (30) days after notice thereof provided to Jabezbaker or Daymond, as the case may be. The cost of any inspection or audit performed shall be paid by Jabezbaker or Daymond, as the case may be, except in the event that the inspection or audit reveals an underpayment of more than three percent (3%) of the amount that should have been paid, RBI agrees to reimburse Jabezbaker or Daymond, as the case may be, for the reasonable cost of any such inspection or audit.

11. The Parties, and each of them, will attempt in good faith to promptly resolve any dispute or controversy arising from or relating to this Amendment or the Agreement (collectively, the "**Dispute**"), by negotiations between applicable representatives, who have authority to settle the controversy. The initial meeting shall take place, in person, or be conducted telephonically within fifteen (15) business days after demand is made by any Party (the "**Initiating Party**"). Disputes shall also include any "deadlock" between Managers and any failure by the Members to achieve unanimity on any actions contemplated in the Agreement.

12. If good faith negotiations as to the Dispute are unsuccessful, the Parties shall engage in non-binding third-party mediation; provided, however, that no Party is required to mediate any Dispute in case of irreparable loss or damage, as set forth in Section 14 below. The Initiating Party shall compile a list of three (3) mediators and send it to the other applicable Parties ("**Responding Parties**"). Within ten (10) business days, the Responding Parties shall select one of these three (3) mediators or send a new list of three (3) mediators to the Initiating Party. If the Parties cannot agree on a mediator, then each side shall select one person from their respective lists, and those two selected persons shall determine an acceptable mediator. Any Dispute not resolved by good faith negotiation or mediation may then be submitted to binding arbitration.

13. Any Dispute must be arbitrated in the greater Philadelphia/South Jersey metro area, before a single arbitrator who is selected and mutually approved by the Parties. The Parties agree that the arbitration may be held elsewhere upon mutual written agreement. If the Parties are unable to or fail to agree on the selection of the arbitrator within fifteen (15) business days of the demand for arbitration being served, the arbitrator will be appointed in the same manner as set forth above in the selection of a mediator. The selected arbitrator shall apply the following American Arbitration Association's Commercial Arbitration Rules dated effective October 1, 2013 as applicable after deleting all references to the "AAA" or substituting the word "Arbitrator" for AAA as applicable and deleting any reference to fees or costs: R-4 excluding Section (f); R-5 excluding section (c); R-6; R-7; R-8; R-10; ; R-17; R-18; R-19; R-21; R-22; R-



{HL898811.16}                                                4

23; R-24; R-25; R-26; R-27; R-28; R-30; R-31; R-32; R-33; R-34; R-35; R-36; R-37; R-39; R40; R-41; R-42; R-43; R-45; R-46; R-47; R-48; R-49; R-50; R-51; R-58; and P-1 and P-2 excluding (a)(i). The arbitrator shall serve as a neutral, independent and impartial arbitrator. Any arbitration decision rendered will be final and binding and judgment thereon may be entered in any court of competent jurisdiction.

14. Each Party shall first attempt to resolve any Dispute in accordance with Section 11 above. Thereafter, nothing herein contained shall bar a Party's right to seek and obtain injunctive relief in accordance with applicable law against actual and/or threatened conduct that will cause such Party irreparable loss or damage with respect to only the following: (i) substantive rights with respect to the Patents; (ii) the transfer of the Patents in accordance with Section 9 above; (iii) the sale of or transfer of substantially all of the assets of the Company; or (iv) the termination of the RBI Grant. Requests for injunctive relief, shall be heard and determined in the United States District Court for the District of New Jersey, Camden Vicinage. The Parties to this Amendment expressly consent to, and agree not to contest such exclusive jurisdiction.

15. Each Party hereto represents and warrants to the other Parties to this Amendment that it has the full power and authority to execute, deliver and perform its respective obligations under this Amendment.

16. To the extent there is a conflict between the terms of this Amendment and the Agreement, the terms of the Amendment shall control.

17. The Parties agree that each shall execute any and all documents and instruments necessary to carry out the terms of this Amendment and the actions contemplated hereby.

18. This Amendment may be executed in multiple counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same Amendment.

*[Remainder of Page Intentionally Left Blank, Signature Page Follows]*



{HL898811.16}                    5

IN WITNESS WHEREOF, the Parties have caused their duly authorized representatives to execute this Amendment as of the date first written above.

**FOFBAKERS HOLDING COMPANY, LLC**

By: _James D. Bal_  9.5.19
Name: James A. Baker
Title: CEO/President

**RASTELLI PARTNERS, LLC**

By: _Rd M. Rdb_  9-5-19
Name: Raymond M. Rastelli, Jr.
Title: President

**DF VENTURES, LLC**

By: _[signature]_  9-5-19
Name: ~~Daymond John~~ Lawrence Fox, Member
Title: Member / Attorney-in-fact

{HL898811.16}                                6

**ADDENDUM**
**("Addendum")**
**TO THE AMENDMENT TO OPERATING AGREEMENT**
**OF FOFBAKERS, LLC**
**("Amendment")**

RASTELLI BROTHERS, INC., a New Jersey corporation ("RBI"), JABEZBAKER, LLC, an Ohio limited liability company (**Jabezbaker**"), AL BAKER, an individual ("**Al**") and BRITTANI BAKER, an individual ("**Brittani**"), for good and valuable consideration, including the covenants and conditions set forth in the attached Amendment, the sufficiency of which is hereby acknowledged, agree as follows:

1. Jabezbaker confirms the grant of the exclusive license to FOFBakers, LLC, set forth in Section 1 of the Amendment and agrees to the terms and conditions set forth in Sections 4, 6, 9, 10, 11, 12, 13 and 14 of the Amendment.

2. RBI agrees to the terms and conditions set forth in Sections 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13 and 14 of the Amendment.

3. Al agrees to the terms and conditions set forth in Sections 1, 4, 6, 8, 9, 11, 12, 13 and 14 of the Amendment.

4. Brittani agrees to the terms and conditions set forth in Sections 1, 4, 6, 9, 11, 12, 13 and 14 of the Amendment.

5. Each party hereto represents and warrants to the other parties to this Addendum that it, he or she has the full power and authority to execute, deliver and perform its, his or her respective obligations under this Addendum and shall execute any and all documents and instruments necessary to carry out the terms of this Addendum and the actions contemplated thereby.

6. This Addendum may be executed in multiple counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same Addendum.

| JABEZBAKER, LLC | RASTELLI BROTHERS, INC. |
|---|---|
| By: *[signature: James D. Bal]* | By: *[signature]* 9-5-19 |
| Name: | Name: Raymond M. Rastelli, Jr. |
| Title: 9-5-19 | Title: Pres. |

*[signature: James D. Bal on behalf of Brittani Bal]*
BRITTANI BAKER

*[signature]*
AL BAKER

{HL909225.2}

RR
JAB

## Supplement

This Supplement to the Settlement Agreement and Mutual Release attached hereto and incorporated herein by reference (the "Settlement"), including the Amendment to Operating Agreement of FOFBAKERS, LLC, is intended to fully and finally settle the Federal Court Action and all Litigation between the Parties.

The terms of the Supplement are as follows:

1. The "carve out" in Section 4(b) of the Settlement Agreement is hereby deleted.

2. Section 8 of the Amendment hereby is amended to permit franchising of Al's restaurant business.

3. Section 3(a) of the Amendment hereby is amended to require Holdings' consent to RBI's sublicensing of the intellectual property set forth in the Patents, which shall not be unreasonably withheld.

4. Section 8 of the Amendment is hereby amended as follows:
   a. Al shall receive a monthly expense and benefits stipend of $1,500 per month for a period of 24 months from RBI
   b. Al shall receive $1,500

RR

JAB

for each personal appearance to promote the Products requested by RBI, plus reasonable expenses, as agreed to in advance by RBI and AI. Personal Appearances are include as trade shows, QVC, or such other promotional events. Personal appearances do not include sales calls to sell specific Products to customers or potential customers. There shall be a minimum of six per year; appearances over fifteen per year will require AI's consent.

C. Section 4 of the Amendment is hereby amended to add a payment to Jabezbaker shall be paid within 10 days following execution of $34,000 upon filing of the Settlement Agreement and Supplement with the federal Court (the "Filing") in addition to the Minimum Commencing following the Filing execution and Payment of the $34,000 for a 12 month period.

5. RBI represents it will expend a minimum of $1.5 million for purchase commitments of raw materials, marketing and promotion, social media, web support, allocated personnel, trade shows and payment of the Minimum to Jabezbaker.

6. The Federal Court shall retain jurisdiction of the Settlement and enforcement thereof for a period of two years. The prevailing party shall be paid its reasonable attorney fees and costs from the non-prevailing party Agreement as to Supplement.

DF VENTURES, LLC

By: _____
Lawrence Fox, Member

7. Sections 5 of the Settlement Agreement is hereby amended to include affiliates.
8. Section 4 of the Settlement shall include affiliates as both Releasors and Releasees.
9. Section 8 of the Amendment with respect to AI's participation and collaboration are hereby amended to make such at AI's discretion.

*JAB*

10. The members of FUBAKERS, LLC (the "Company") agree to retain a mutually acceptable investment banker no later than 3 years from the execution of the Settlement and Supplemental for purposes of valuing the Company and determining strategies and plans, for including a potential liquidity event, at the Company's expense, or as otherwise agreed by the members.

11. All of Al's expenses shall be submitted to RBI for reimbursement. If Al needs expenses advanced by RBI the advance will be based on average monthly expenses. RBI will furnish Al with a credit card for approved expenses.

FUBAKERS HOLDING COMPANY, LLC
By: *James A. Baker*
Title: James Baker CEO/President

Rastelli Partners, LLC
By: *Ray M. Rastelli*
Raymond M. Rastelli, Jr.
Title: President/Managing Partner

Rastelli Brothers, Inc.
By: *R. M. Rastelli*
Raymond M. Rastelli, Jr.
Title: President

JABEBAKER, LLC
by: *James A. Baker*
James A. Baker
Title: Member with full authority to sign on behalf of all Members.

*James A. Baker*
James A. Baker, individually and representing he has authority to sign on behalf of Brittani Baker and Sabrina Baker