UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DF VENTURES, LLC, and DAYMOND JOHN, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | Index No. 1:23-cv-03126 |
| | ) | |
| FOFBAKERS HOLDING COMPANY, LLC, | ) | |
| JABEZBAKER, LLC, JAMES A. BAKER a/k/a AL | ) | |
| BAKER, *individually*, BRITTANI BO BAKER, | ) | |
| *individually*, and SABRINA BAKER, *individually*, | | |
| | | |
| **Defendants.** | | |

---

**PLAINTIFFS DF VENTURES, LLC AND DAYMOND JOHN'S REPLY IN OPPOSITION TO DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

---

**GORDON REES SCULLY MANSUKHANI, LLP**
One Battery Park Plaza, 28th Floor
New York, New York 10004
Mercedes Colwin, Esq.
Brittany L. Primavera, Esq.
Lindsey Blackwell, Esq.
Hannah Kucine, Esq.
Telephone: (212) 269-5500
mcolwin@grsm.com
bprimavera@grsm.com
lblackwell@grsm.com
hkucine@grsm.com
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................1

II.   PROPOSED FINDINGS OF FACT ................................................4

III.  LEGAL ANALYSIS .........................................................................4

      A.    Defendants Have Inarguably Waived Any Potential Personal
            Jurisdiction Defense ..............................................................4

      B.    This Court Does Have Subject Matter Jurisdiction .............6

      C.    Plaintiffs Have Shown That Permanent Injunctive Relief is
            Proper .....................................................................................8

            1.    Plaintiffs Have Proven their Case on the Merits .......9

            2.    Plaintiffs Have Proven Their Irreparable Harm.......13

IV.   CONCLUSION...............................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetrex Worldwide, Inc. v. Sourcing for You Ltd.*,
  555 F.Appx. 153 (3d Cir. 2014) ..........................................................7

*Chanel, Inc. v. Matos*,
  133 F.Supp.3d 678 (D.N.J. 2015) ........................................................9

*DePuy Synthes Sales, Inc. v. Edwards*,
  23 F.Supp.3d 472 (E.D.Pa 2014) ........................................................4

*eBay Inc. v. MercExchange, LLC*,
  547 U.S. 388 (2006) .............................................................................9

*Gray Holdco, Inc. v. Cassady*,
  654 F.3d 444 (3d Cir. 2011) ................................................................7

*Hoffman v. Blaski*,
  343 U.S. 335 (1960) .............................................................................4

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
  921 F.3d 98 (3d Cir. 2019) ..................................................................4

*Jones v. Marin*,
  No. 07-0738, 2009 WL 2595619 (D.N.J. Aug. 20, 2009) ..................13

*Neifeld v. Steinberg*,
  438 F.3d 423 (3d Cir. 1971) ................................................................4

*Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc.*,
  143 F.3d 800 (3d Cir. 1998) .................................................. 13, 14, 15

*RNC Systems, Inc. v. Modern Technology Group, Inc.*,
  861 F.Supp.2d 436 (D.N.J. 2012) ......................................................12

*Travelodge Hotels, Inc. v. Honeysuckle Enterprises*,
  357 F.Supp.2d ....................................................................................13

**Other Authorities**

Federal Rule of Civil Procedure 4(e)(1) .................................................................5

Local Rule 5.1(b) .........................................................................................6

N.J. Ct. R. 4:4-3 .........................................................................................5

Pursuant to this Honorable Court's order issued on the final day of the hearing (the "Hearing") on this matter, Plaintiffs DF Ventures LLC ("DF Ventures") and Daymond John ("Mr. John") (together, "Plaintiffs") respectfully submit this reply to Defendants' Proposed Findings of Fact and Conclusions of Law, electronically filed on July 13, 2023.

## I.   <u>INTRODUCTION</u>

Al Baker, Brittani Baker, Sabrina Baker, FOFBakers Holding Company, LLC, and Jabezbaker, LLC's (collectively, the "Bakers" or the "Defendants") Proposed Findings of Fact and Conclusions of Law ("Defendants' Brief") omit procedural or substantive arguments that refute the need for this Honorable Court to grant permanent injunctive relief to prevent further irreparable harm. Defendants' Brief tangentially mentions Plaintiffs and is rife with misinterpretations of the law and of the record. Crucially, Defendants' Brief does not attempt to deny that the Bakers are responsible for the flurry of false social media posts that have caused the public to call for Mr. John's removal from *Shark Tank*, cancellation, or imprisonment. Defendants do not deny that these posts are negative or disparaging, nor that they violate the Operating Agreement and Settlement Agreement to which the Parties are bound. Defendants' argument, after *days* of testimony and hundreds of pages of evidence, is that their breach of these agreements is somehow "excused" because of alleged breaches by Plaintiffs and the Rastelli Parties.

Yet, of the thirty-five pages comprising Defendants' Brief, Plaintiffs are mentioned on approximately five of them. Mr. John's name is nearly entirely absent from Defendants' Brief beyond briefly describing his non-managerial role in FOFBakers, LLC (the "Company"). Mr. John's name and likeness appears in the headline, cover and substance of a vast majority of the Bakers' videos, and they allege that he is at the heart of some convoluted conspiracy against them. Their justification for the significant harm they have caused to him is a clear afterthought.

Defendants' *sole* allegation of breach against Mr. John is that he did not sufficiently promote the Company's product since the Settlement Agreement, ignoring entirely that the Rastelli Parties informed Mr. John and the Bakers that due to Covid-19 inventory levels were being depleted and production was disrupted. Mr. John, a non-managing member, is beholden to the requests and representations of the managing members ("Managers"). The Managers never reached out to Mr. John or his team to ask for additional promotional materials beyond the intellectual property that was already provided for use in perpetuity. Even still, Plaintiffs fully upheld their contractual obligations to use their business contacts – gained through years of hard work and reputational building – to assist the Managers, as they requested, to help save or sell the Company. Attempts at a sale were unsuccessful, but Plaintiffs' relationship and contact with Company A led to a new producer

capable of manufacturing the product. If this was not an action taken in the Company's interest, then nothing is.

Nevertheless, the Bakers now insist that Mr. John's brief lack of social media posts (of which no requests were made by the Managers) to promote a product with limited inventory for sale gives them carte blanche to smear his name on social media and attack his reputation for as long as they so choose. Mr. John and Mr. Fox testified at length to the harms that already manifested due to the Bakers' actions, and the greater harms to come absent Court intervention. Put simply, no amount of money will buy back Mr. John's good name, meticulously built over thirty-plus years. If injunctive relief is denied, there is no doubt that the Bakers' return to public posting will be swift, vicious, and unending. In the Court's June 16, 2023 Order ("June 16 Order"), the Court noted that "Defendant's actions represent a calculated and deliberate attack on Plaintiffs' reputation and goodwill that is unusual in its vehemence and persistence." They have made clear that the posts thus far are only the beginning, and they intend to "share their story" as far and wide as possible, for as long as possible. Their actions have already done grave damage to the Company's potential profitability and to Mr. John.

As such, injunctive relief must be granted both to remove the damaging content from Defendants' social media platforms as well as prevent Defendants from making any further public disparaging comments regarding Plaintiffs.

## II.   PROPOSED FINDINGS OF FACT

Plaintiffs' Proposed Findings of Fact ("PFOF"), as well as the Proposed Findings of Fact of the Rastelli Parties, accurately present the information gleaned through witness testimony and documentary evidence. As such, Plaintiffs' and the Rastelli Parties' Proposed Findings of Fact are incorporated by reference as if fully set forth herein.

## III.   LEGAL ANALYSIS

### A.   Defendants Have Inarguably Waived Any Potential Personal Jurisdiction Defense

It is axiomatic that a defense alleging want of personal jurisdiction "can be waived by consent or conduct of the defendant." *Neifeld v. Steinberg*, 438 F.3d 423, 427 (3d Cir. 1971) (citing *Hoffman v. Blaski*, 343 U.S. 335, 343 (1960)); *see also DePuy Synthes Sales, Inc. v. Edwards*, 23 F.Supp.3d 472, 480 (E.D.Pa 2014). A defendant waives a personal jurisdiction defense where he, "actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum," including by "request[ing] affirmative relief and rulings from a court." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 921 F.3d 98, 105-06 (3d Cir. 2019).

Defendants now argue – in a post-hearing brief meant to summarize a multi-day hearing in they which participated and never mentioned the words "personal jurisdiction" – that this Honorable Court lacks personal jurisdiction over Plaintiffs' claims. This argument defies logic and is beyond the bounds of good faith.

Defendants had sufficient notice of the proceedings, evidenced by electronically filing responsive documentation from the very outset, and were afforded every opportunity to present their case, both before and after retaining counsel. Defendants cannot be permitted to present the substance of their argument through witnesses evidence, then assert that they are not bound by a ruling based upon that argument.

Plaintiffs have made sufficient efforts to serve Defendants, who continuously tried to evade service. Plaintiffs attempted personal service at all known personal and business addresses of each Defendant, then sent, by regular and certified mail, all pleadings and Court orders requiring service to all of those addresses in accordance with Federal Rule of Civil Procedure 4(e)(1) and N.J. Ct. R. 4:4-3. To further ensure that Defendants were made aware of the pleadings and Hearings, all documents – including exhibits presented by Plaintiffs at the Hearing – were emailed to the Bakers' numerous email addresses including those that the Bakers used to conduct Company business and to communicate with this very Court.

Plaintiffs could not possibly have personally served Defendants, as Defendants admitted to being in states or cities different than those noted in the addresses that Plaintiffs gathered through reasonable search of the public record. Plaintiffs learned in the pre-hearing telephone conference with this Honorable Court on or around June 12, 2023, that Al and Sabrina were in Arizona, and Brittani Baker was somewhere in Florida. The Bakers repeatedly refused to provide more detail on

their whereabouts. Brittani Baker only said that she was in "an office" in or around Tampa, Florida and that Al and Sabrina Baker were staying at a friend's residence in or around Scottsdale, Arizona. Requests on the record for the addresses of their current locations were rebuffed. Confusingly, at the June 26 Hearing date, Plaintiffs learned that Al and Sabrina Baker had relocated to California from Arizona, despite previous representations that they were unable to travel to New Jersey for financial and health-related reasons.[1] Al and Sabrina Baker did not provide the exact address where they were staying in California.

Defendants cannot consciously evade personal service and then rely upon an alleged lack of personal service to prevent a binding ruling. For the avoidance of doubt, contemporaneously with the filing of this Reply Brief, Plaintiffs will file a Certification of Attempted Service to confirm their efforts to serve the Defendants with all required documents.[2]

**B.    This Court Does Have Subject Matter Jurisdiction**

Next, Defendants unpersuasively argue that this Honorable Court lacks subject matter jurisdiction to hear this claim. Plaintiffs sufficiently pled diversity jurisdiction in their Complaint. *See* Pl. Compl., ECF No. 1. The Settlement Agreement dictates that this Court is the proper venue to enforce those terms but

---

[1] This Hearing date was adjourned from June 15 to June 26 after Al Baker had a medical emergency.

[2] Plaintiffs did not file this Certificate at an earlier time because they had a reasonable, good-faith belief that the Defendants had waived any defense based on personal jurisdiction due to their continued participation in the Hearing. This Honorable Court's Local Rule 5.1(b) permits this proof of service to be supplied "at any time" unless doing so would "result in material prejudice to the substantive rights of any party." Considering the sheer frivolity of Defendants' personal jurisdiction argument, no such substantive rights are at risk.

Defendants now rely upon the Amended Operating Agreement in pursuing arbitration. Defendants waived their right to arbitration by participating in this proceeding. Arbitration should "streamline the proceedings, lower costs, and conserve private and judicial resource." *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 459 (3d Cir. 2011) (internal citations and quotations omitted). A party that actively litigates a case and then belatedly claims that it should be submitted to arbitration frustrates those goals. *Gray Holdco, Inc.*, 654 F.3d at 459. When a party attempts to do so courts heavily weigh in favor of finding a waiver of arbitration. *Id.* Defendants have done so and waived arbitration.

Defendants allege that Plaintiffs can only seek injunctive relief in certain instances, none of which they claim are present in this action. Injunctions are available even without explicit exception to the arbitration agreement. *Aetrex Worldwide, Inc. v. Sourcing for You Ltd.*, 555 F.Appx. 153, 154 (3d Cir. 2014) (internal citations omitted). The relief sought by Plaintiffs does not require submission to an arbitrator. Instead, the Parties agreed in § 14 of the Settlement Agreement that the terms of the contract would be enforced in the United States District Court for the District of New Jersey, Camden Vicinage, itself conferring jurisdiction over this action.

Defendants rely upon the dispute resolution section of the Amended Operating Agreement. However, this section requires that the parties first try to

resolve their differences through negotiations within fifteen days after a demand letter is sent. *See* Pl. Compl., ECF No. 1, at Ex. A ¶ 11. If the parties cannot successfully negotiate within that timeframe and non-binding mediation fails then the parties submit their differences to an arbitrator. *Id.* at ¶ 11-13. Defendants repeatedly refused to engage with Plaintiffs and the Rastelli Parties prior to any court filing. Defendants ignored the cease and desist letters, which attempted to resolve the dispute. *See* Pl. Compl., ECF No. 1, at Ex. J. Plaintiffs left voicemails and sent emails on June 8, 2023, willing to discuss this matter. The Bakers were still not receptive to this discussion when Plaintiffs' counsel broached resolution on June 12, 2023, and they had no intention of removing their social media posts or ceasing commenting on and sharing additional posts. *See* PFOF ¶ 87. They want their social media posts to be "out there" and seen by everyone with internet access. *Id.* at ¶¶ 82, 85, 87. Plaintiffs had no choice but to continue with this action seeking immediate injunctive relief.

## C.   Plaintiffs Have Shown That Permanent Injunctive Relief is Proper

As an initial matter, Defendants' Brief alleges that Plaintiffs currently seek preliminary injunctive relief, when this Honorable Court converted the Parties' Hearing to one for permanent injunctive relief. In seeking a permanent injunction, Plaintiffs must demonstrate "(1) that [they have] suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages, prove inadequate to compensate for that injury; (3) that the balance of hardships between the plaintiff[s]

and defendant[s] favor equitable relief; and (4) that the public interest would not be disserved by a permanent injunction." *Chanel, Inc. v. Matos*, 133 F.Supp.3d 678, 689 (D.N.J. 2015) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)) (internal citations omitted). Defendants do not present any argument as to two of the four factors: (1) whether the balance of hardships between the Plaintiffs and Defendants favor equitable relief, and (2) whether the public interest would be disserved by a permanent injunction. As such, Plaintiffs' interpretation of these two factors – that they both weigh heavily in favor of granting injunctive relief – is unopposed. This Honorable Court would be right to consider these two factors' omission as an admission that they weigh in favor of granting injunctive relief.

### 1.  <u>Plaintiffs Have Proven their Case on the Merits</u>

As this Honorable Court noted in its June 16 Order and several times throughout this Hearing, Plaintiffs' request for injunctive relief is based, foundationally, on their breach of contract claim. While Plaintiffs believe there is currently enough on the record to support a finding that Defendants' statements have been defamatory, these claims are not at issue here and will be explored further as this matter proceeds to discovery.

The Settlement Agreement contains a non-disparagement provision that prohibits any party from making any written or verbal remarks about another party which are negative, disparaging, or false, or could impact the reputation or credibility of another party. *See* PFOF ¶¶ 51-52. Brittani Baker has made over fifty

posts to her social medial accounts about Mr. John and the Rastelli Parties since May 15, 2023. *Id.* at ¶ 65. Brittani Baker has used these posts to express negative, disparaging, and false sentiments about Mr. John, such that he is a "thief" and committing fraud and illegal activity. *Id.* at ¶ 68. Al Baker confirmed that these statements made by Brittani Baker are negative. *Id.* at ¶ 69. Brittani Baker admitted that characterizing Mr. John as a criminal and suggesting that he should be imprisoned is negative. *Id.* at ¶ 77. The plain reading of these statements, and Al Baker's and Brittani Baker's own admissions that they are negative, shows that Defendants have breached the terms of the Settlement Agreement.

Defendants have also breached the Operating Agreement's confidentiality provision, which restricts all Company members from divulging proprietary data, information, or trade secrets. *Id.* at ¶ 35. Brittani Baker has violated this provision countless times. In example, Brittani posted videos disclosing a spreadsheet which showed profit and loss calculations for the Company. *Id.* at ¶ 70. That spreadsheet affords competitors insight into the Company's finances that should be protected. In another instance, Brittani Baker publicized an internal email from Ray Rastelli III that allows the public to learn of the Company's various strategies. *Id.* Competitors could also utilize this information to compete against the Company based upon knowing the Company's strategies. Perhaps most egregious is that Brittani Baker publicized the Company's Operating Agreement and its confidential terms.

Defendants have breached the confidentiality provision by disseminating the very proprietary information that was protected under that provision.

Defendants claim that Plaintiffs have breached the Settlement Agreement, but according to their own counsel, Defendants do not have any evidence of a breach beyond Brittani Baker's opinion. *Id.* at ¶ 97. Under the Operating Agreement, only the Managers of the Company were responsible for daily operations, financial reporting, accounting, and running the business. *Id.* at ¶ 31. Mr. John was the sole non-managing member of the entity and defined as a brand ambassador whose role focused on marketing, promoting, and making connections for the business. *Id.* at ¶ 33. Mr. John's role remained the same after the Settlement Agreement went into effect. *Id.* at ¶ 50. Mr. John does not have access to the Company's finances or its business accounts. *Id.* at ¶ 30. Mr. John has no ability to participate in the management or control of the Company. *Id.*

Defendants generally allege that Mr. John did not sufficiently promote the Company's product. Since the Settlement Agreement, Mr. John never received any formal or informal requests from any of the Managers to participate in photoshoots, interviews, or other promotions aside from which he had already performed for the Company. *Id.* at ¶ 64. Again, Mr. John is a non-managing member who could NOT manage or control the Company and was obligated to follow directives from the Managers. Mr. John received no such directives and did not breach his duties.

Defendants' Brief does not acknowledge that the pandemic in 2020 continued to create supply chain disruptions throughout 2022, yet Mr. John still utilized his personal business contacts to introduce a new supplier to the Managers. *Id.* at ¶¶ 59-61. Plaintiffs also materially participated in the efforts to market the Company for sale to an investment bank. *Id.* at ¶ 63. Plaintiffs exerted extensive efforts to investigate whether that sale was possible, but it became apparent to Plaintiffs that there was no interest. *Id.* These examples demonstrate that Plaintiffs continued to fulfill their duties under the different agreements and continued to further the viability of the Company. Defendants have offered not a scintilla of evidence, aside from Brittani Baker's beliefs, to prove that Plaintiffs have breached the terms of the Settlement Agreement.

Even if Defendants can prove that Plaintiffs breached the Settlement Agreement – which they cannot – that does not excuse their countless breaches. Again, Defendants do not have any evidence of a breach beyond Brittani Baker's opinion. *Id.* at ¶ 97. Regardless, a party that believes another contracting party has breached their agreement must either stop performance and assume the contract is avoided, or continue its performance and sue for damages. *RNC Systems, Inc. v. Modern Technology Group, Inc.*, 861 F.Supp.2d 436, 437 (D.N.J. 2012) (citations omitted). The non-breaching party cannot simultaneously cease its own performance under the agreement while also taking advantage of the contract's benefits.

*Travelodge Hotels, Inc. v. Honeysuckle Enterprises, Inc.*, 357 F.Supp.2d 788, 799 (D.N.J. 2005). Even a material breach does not excuse the non-breaching party from its own performance. *Jones v. Marin*, No. 07-0738, 2009 WL 2595619, *4 (D.N.J. Aug. 20, 2009). Defendants' suggestion that it may permissibly breach the agreement by claiming that Plaintiffs breached the agreement is without merit and disproved by caselaw.

### 2.   Plaintiffs Have Proven Their Irreparable Harm

Defendants have irreparably harmed Plaintiffs by violating the non-disparagement provision in the Settlement Agreement. This clause specifically indicates that any violations create irreparable harm, for which injunctive relief is the only proper remedy. Defendants' Brief claims that Mr. John can only speculate as to the harm he has suffered while also citing to the testimony in which Mr. John provided examples of such harm. In the week following Defendants' online smear campaign against Mr. John a major network cancelled a television show that was already greenlit; he lost a speaking engagement; and a potential brand activation partnership halted. *See* PFOF at ¶ 93. Defendants' brief only refers to the cancelled television show.

Defendants' cherry picking of Mr. John's testimony is an attempt to circumvent caselaw holding that the loss of business opportunities, trade, and goodwill result in irreparable harm. *Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998). Mr. John has lost business ventures, that is

not speculative, and it is what Brittani Baker intended to happen. Social media users commented that they hoped Mr. John would be cancelled and celebrated the loss of the speaking engagement. *See* PFOF at ¶ 73. Brittani Baker responded to some of these comments thanking them and encouraging the commenters to continue. *Id.* at ¶¶ 74-76. Brittani Baker thanked these supporters because they helped her achieve her goal of causing irreparable harm to Mr. John's business dealings. The Court ruled in its June 16 Order that "Plaintiffs have also made a prima facie showing that they have suffered severe and unusual harm to their businesses, their business' reputations, and their personal reputations as a result of Defendants' calculated campaign against them."

Defendants' attack on Mr. John's reputation shows further irreparable harm. Courts consistently find irreparable harm in situations where a business reputation is **at stake**. *Pappan Enterprises, Inc.*, 143 F.3d at 805 (emphasis added). Irreparable harm exists where a party puts another party's reputation in peril. Mr. John's reputation and brand is based upon "honesty and trust and empowerment" that took over thirty years to create. *See* PFOF at ¶ 8. That brand was built through hundreds of different investments in Mr. John's own ventures and in other companies. *Id.* Defendants have put Mr. John's brand in peril by suggesting that Mr. John is a "thief" and committing fraud and illegal activity. *Id.* at ¶ 68. Again, this breach of the non-disparagement provision is expressly defined as irreparable harm in the

Settlement Agreement. Regardless, the public has adopted these defamatory statements about Mr. John's brand through their social media postings. Commenters have accused Mr. John of committing predatory behavior and stealing. *Id.* at ¶ 73. The public confirmed that they will never support one of Mr. John's business ventures again. *Id.* These sentiments are memorialized in thousands of comments on Brittani Baker's postings. Defendants have, at a minimum, caused irreparable harm by putting Mr. John's business reputation at stake, assuming they have not already eviscerated it. This Court acknowledged as much in the June 16 Order, which ruled that "Plaintiffs have made a prima facie showing severe enough that we find we could not remedy the harm they have suffered and could continue to suffer with money damages as might usually befit a breach of contract case such as this."

## IV.   CONCLUSION

For the reasons described above, as well as in Plaintiffs' Post-Hearing Brief filed on July 13, 2023, this Honorable Court should grant Plaintiffs' requested permanent injunctive relief.

DATED AND SUBMITTED this 20th day of July, 2023.

**GORDON & REES**

By: */s/Mercedes Colwin*
Mercedes Colwin, Esq.
Brittany Primavera, Esq.
Lindsey Blackwell, Esq.
Hannah Kucine, Esq.
1 Battery Park Plaza, 28th Floor
New York, New York 10004
(212) 269-5500
mcolwin@grsm.com
bprimavera@grsm.com
lblackwell@grsm.com
hkucine@grsm.com
*Counsel for Plaintiffs DF Ventures, LLC and Daymond John*

TO: All Parties *via* ECF

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DF VENTURES, LLC, and DAYMOND JOHN,** )  | |
| )  | |
|    **Plaintiffs,** )  | |
| )  | |
| **v.** )  | **Index No. 1:23-cv-03126** |
| )  | |
| **FOFBAKERS HOLDING COMPANY, LLC,** )  | **CERTIFICATE OF SERVICE** |
| **JABEZBAKER, LLC, JAMES A. BAKER a/k/a AL** )  | |
| **BAKER,** *individually*, **BRITTANI BO BAKER,** )  | |
| *individually*, **and SABRINA BAKER,** *individually*, | |
| | |
|    **Defendants.** | |

I, Paulette Guerrero-Duran, do hereby certify that I caused Plaintiffs DF Ventures, LLC and Daymond John's Post-Hearing Brief and this Certificate of Service to be electronically filed on July 20, 2023, as well as true and accurate copies of these documents to be served via email and regular mail upon Defendants' counsel, identified below:

> Law Offices of Alexander Schachtel, LLC
> Alexander Schachtel, Esq.
> 101 Hudson Street, Suite 2109
> Jersey City, NJ 07302
> xschachtel@gmail.com

**GORDON & REES**

By: /s/
Mercedes Colwin, Esq.
Brittany Primavera, Esq.
Lindsey Blackwell, Esq.
Hannah Kucine, Esq.
1 Battery Park Plaza, 28th Floor
New York, New York 10004
(212) 269-5500
mcolwin@grsm.com
bprimavera@grsm.com
lblackwell@grsm.com
hkucine@grsm.com
*Counsel for Plaintiffs DF Ventures,*
*LLC and Daymond John*
