UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DF VENTURES, LLC and DAYMOND JOHN, | CIV.IL NO. 1:23-CV-3126-RBK-AMD |
| Plaintiffs, | |
| vs. | |
| FOFBAKERS HOLDING COMPANY, LLC, JABEZBAKER, LLC, JAMES A. BAKER a/k/a AL BAKER, *individually*, BRITTANI BO BAKER, *individually*, SABRINA BAKER, *individually,* | |
| Defendants. | |

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS DF VENTURES, LLC AND DAMOND JOHN'S ATTORNEYS FEES APPLICATION

**GORDON REES SCULLY MANSUKHANI, LLP**
One Battery Park Plaza, 28th Floor
New York, New York 10004
Mercedes Colwin, Esq.
Brittany L. Primavera, Esq.
Lindsey Blackwell, Esq.
Hannah Kucine, Esq.
Telephone: (212) 269-5500
mcolwin@grsm.com
bprimavera@grsm.com
lblackwell@grsm.com
hkucine@grsm.com

i

Plaintiffs DF Ventures LLC ("DF Ventures") and Daymond John ("Mr. John") (together, "Plaintiffs") respectfully submit this memorandum in opposition to Defendants Al Baker, Brittani Baker, Sabrina Baker, FOFBakers Holding Company, LLC, and Jabezbaker, LLC (collectively, the "Bakers" or the "Defendants") response to Plaintiffs' attorneys' fee affidavits, and in further support of Plaintiffs' application for attorneys' fees.

## I.  PLAINTIFFS WERE THE PREVAILING PARTY

Courts apply a two-prong test to determine whether a party is prevailing. This test requires a court to determine whether: (1) the plaintiff obtained relief on a significant claim in the litigation; and (2) there is a causal connection between the litigation and the relief obtained from the defendant. *P.G. v. Brick Twp. Bd. of Educ.*, 124 F. Supp. 2d 251, 259 (D.N.J. 2000). Despite Defendants' continued assertions to the contrary, it is beyond argument that Plaintiffs were the prevailing party of the permanent injunction hearing that took place before this Honorable Court between May and July of this year (the "Hearing").

Though Plaintiffs initially requested preliminary injunctive relief, this Honorable Court converted the Hearing to an application for a permanent injunction pursuant to FRCP 65(a)(2). Civ. No. 23-3126, ECF No. 47 at 1. A permanent injunction hearing is an adjudication on the merits, as the court must "determine if the plaintiff *has actually succeeded on the merits*" when deciding whether to issue a

permanent injunction. *Ciba-Geigy Corp. v. Bolar Pharmaceutical Co., Inc.*, 747 F.2d 844, 850 (3d Cir. 1984) (citing *Evans v. Buchanan*, 555 F.2d 373 (3d Cir.1977)) (emphasis added). It is unclear why Defendants continue to assert that the Hearing was in any way "preliminary," or that this Honorable Court's July 21 Opinion and Order contained no decisions on the merits of this matter. Civ. No. 23-3126, ECF No. 77 at 1. Plaintiffs are statutorily entitled to attorneys' fees as a prevailing party and Plaintiffs were, in fact, the prevailing party at the Hearing. Plaintiffs are not seeking attorneys' fees related to the continuing litigation in this matter, though they reserve the right to do so.

As such, the valid contractual provision between the Parties allowing for an attorneys' fee award to the prevailing party must be honored.

## II. **PLAINTIFFS' REQUESTED FEES ARE REASONABLE AND PROPER**

### A. LARRY FOX

As an initial matter, Defendants' contention that Mr. Fox is not entitled to attorneys' fees because he is an agent of DF Ventures, LLC should not be afforded any weight. As described in Mr. Fox's affidavit, he is Mr. John's personal attorney, not "general corporate counsel" to DF Ventures, LLC as Defendants allege. Mr. Fox receives no annual salary for his role as Mr. John's personal attorney, and is only paid an hourly rate for the legal work he provides. Mr. Fox was intricately involved in all aspects of preparing for and litigating this matter as counsel to Mr. John. In addition to corporate matters, Mr. John's personal reputation was impugned. Mr.

2

Fox has been previously involved in all legal issues regarding Mr. John in this venture since its inception and worked closely with Mr. John, counseling him throughout this matter. In addition, Mr. Fox worked closely with the Gordon & Rees team throughout the Hearing, and his work was in no way duplicative of any other work completed for the Hearing. Mr. Fox provided unique perspective and expertise as Mr. John's personal attorney, and Mr. John would be severely prejudiced if Mr. Fox's contributions were unduly discounted.

Other than a vague allegation that Mr. Fox's legal work was "largely duplicative and redundant" of work billed by Gordon & Rees, Defendants make no specific objections as to the work invoiced by Mr. Fox. It is not unusual that Mr. John sought the counsel and participation of his longtime personal attorney for an emergency hearing involving irreparable and continuing harm to Mr. John's reputation, and such participation resulted in legal fees that are recoverable pursuant to the contract between the Parties. As noted in Mr. Fox's Affidavit, he provided Mr. John with a significant discount to his usual hourly fees, and only seeks a small fraction of the funds he would ordinarily be owed. Mr. Fox's hourly rate charged in this matter, $441 per hour, is well below the industry standard for a lawyer with three decades of experience including work at a prestigious international law firm and individually advising high net worth individuals in both corporate and litigation matters. In addition to Mr. Fox's reduced rate, Mr. Fox also provided a further

discount and wrote off more than 25% of his time as set forth in his Affidavit. Therefore, the reduced amount being sought is inarguably reasonable. To further reduce the fees sought by Mr. Fox, when a reduced hourly rate and an additional 25% discount has already been applied, would be unfair.

**B.    GORDON & REES**

Furthermore, as stated in Plaintiffs' initial Motion for Attorneys' Fees, and restated in the Affidavit of Mercedes Colwin, Plaintiffs heavily discounted their usual, reasonable hourly rates, and the discount is reflected in the attorneys' fees sought. The total amount of attorneys' fees claimed for Gordon & Rees' fees is $90,551, with an additional $9,971.05 in costs that Defendants do not dispute.[1] As noted in Exhibit A to the Affidavit of Mercedes Colwin, Gordon & Rees attorneys and staff spent 706.3 hours on legal work related to the Hearing. If billed at the usual hourly rates discussed in the Affidavit of Mercedes Colwin, the legal fees accumulated in this matter would total $330,150.50. However, in recognition of Ms. Colwin's decades of work with Mr. John's companies, Gordon & Rees agreed to perform all work prior to August 4, 2023 for a fee of $75,000, with hourly rates beginning only after that date. Based upon the hours worked, this figure represents a reduction in Gordon & Rees' fee request by *over seventy-five percent* (75%).

---

[1] Notably, Defendants do not dispute any time entries for the time period after use of the hourly fee rate began.

Defendants' request that Plaintiffs' attorneys' fees be "reduced by at least $75,000.00 if not more" would essentially eliminate any award to Plaintiffs for this legal work. As it seems that Defendants have based their request for reduction on the $330,150.50 figure, rather than the actual $90,551 figure, their request to reduce these fees by at least $75,000 should be taken as a tacit admission that Defendants believe an attorneys' fee award of around $255,150.50 would be reasonable – certainly, then, the actual $90,551 sought would be even more so.

To be clear, to confirm the extensive work done by the Gordon & Rees team on an expedited schedule to prepare for and participate in the Hearing, Gordon & Rees carefully logged their time, an invoice of which was provided as Exhibit A to the Affidavit of Mercedes Colwin. The invoice notes what such hourly fees *would have* cost if not for the fee arrangement between Gordon & Rees and Plaintiffs, but Plaintiffs only seek a fraction of that number based on the amount actually paid for these legal services. Moreover, *even if* the normal hourly rate were used, the specific entries highlighted by Defendants would not warrant individual deductions. Plaintiffs specifically respond to each of Defendants' requested reductions as follows:

    1.    **5/21/2023:** Defendants evidently misread the entry in question. Rather than a single teleconference (which is the next entry in the spreadsheet, billed for .5 hours), Mr. Camhi billed for multiple substantive, privileged

communications that were absolutely required at the outset of this matter to gather facts, develop strategy, and develop a litigation plan. Further, this time was not billed at an hourly rate, as it was part of the initial fee arrangement between Plaintiffs and Gordon & Rees.

2.      **5/23/2023:** Again, Defendants appear to have misread Plaintiffs' time log. Rather than a single teleconference, Mr. Camhi's referenced entry is for multiple teleconferences totaling 1.7 hours, and then supplementing the complaint and accompanying memorandum for 2.8 hours. The time billed was necessary and reasonable and, as discussed, was not billed at an hourly rate.

3.      **5/23/2023:** The time spent drafting the Complaint and Order to Show Cause, which also required drafting of a legal memorandum, at the outset of this matter required extensive review and drafting time due to the condensed time frame. Ms. Blackwell and Ms. Kucine worked together to review and compile significant documentation and present a complex legal theory that required hours of work. This drafting time was not unreasonable and, as noted above, was not billed at an hourly rate.

4.      **5/24/2023:** Please see the above explanation at "3" regarding the reasonable and necessary work done by Ms. Blackwell and Ms. Kucine related to drafting the complaint and order to show cause.

5.    **5/25/2023:** Please see the above explanation at "3" regarding the reasonable and necessary work done by Ms. Blackwell and Ms. Kucine related to drafting the complaint and order to show cause.

6.    **5/25/2023:** Ms. Colwin's time on this task was reasonable, as the privileged communication contained several attachments requiring careful review. Again, though this would have ordinarily been billed at $2,535, it was not due to the fee arrangement with the Plaintiffs.

7.    **5/27/2023:** It is unreasonable for Defendants to suggest that Ms. Primavera's preparations for the Hearing were duplicative because they took more than one day. Hearing preparations, especially where there is significant documentary evidence involved and where the hearing is conducted on an expedited schedule, are time-consuming and required the entire Gordon & Rees team to devote days to preparation. This is not abnormal or excessive.

8.    **5/30/2023:** The discrepancy between Ms. Kucine and Ms. Colwin's time entries for Hearing attendance on this date is due to Ms. Colwin including travel and Hearing attendance in the same entry, and Ms. Kucine splitting travel and Hearing attendance into multiple entries. No reduction is required here.

9.    **5/30/2023:** Both Ms. Kucine and Ms. Colwin are part of the Gordon & Rees team that was responsible for preparing for and participating in the

7

Hearing. It is not "redundant" or "excessive" for multiple team members to attend a hearing, nor is it unreasonable for an associate and a partner to work together to complete necessary tasks throughout the course of a hearing.

10. **5/30/2023:** Again, Ms. Primavera was an integral part of the Gordon & Rees team who actively participated in the Hearing. Gordon & Rees appropriately staffed this matter given the extremely expedited timeline for the Hearing given the relief sought for irreparable and continuing harm being done to the Plaintiffs.

11. **5/31/2023:** It does appear that there is an inadvertent duplicate entry. However, as these entries fall under the $75,000 fee agreement between Gordon & Rees and Plaintiffs, the hourly rate was not charged for these entries, so no corresponding deduction is necessary.

12. **5/31/2023:** Please see the above explanation at "10" regarding the reasonable and necessary work done by Ms. Primavera in planning and preparing for the Hearing, which was not duplicative of work done by other team members.

13. **6/5/2023:** Ms. Blackwell's work was not "cumulative" or "redundant of prior work." As Defendants know, the Complaint in this matter was amended and re-filed on several occasions, which required substantive review and discussion at each juncture. Ms. Blackwell's work was necessary to

8

ensure the Amended Complaint was complete and ready for filing. Furthermore, the redactions, which only protect privileged information, do not obscure so much that it is "uncertain if these are related to the case."

14. **6/6/2023:** Both Ms. Blackwell and Ms. Kucine completed necessary drafting and review work that was not duplicative. The Amended Complaint is a lengthy document with numerous exhibits requiring careful analysis and team collaboration.

15. **6/7/2023:** Defendants fail to mention that the Court communication referenced in this entry was a copy of the Amended Complaint, which is *274 pages* including exhibits (as noted in the time entry). That Ms. Colwin thoroughly reviewed this lengthy document to ensure all information was included and filed is not unreasonable.

16. **6/8/2023:** Ms. Blackwell had a lengthy meeting with Larry Fox, counsel for Plaintiffs, in the midst of the Hearing. Ms. Blackwell also spent hours reviewing TikTok videos, which were key evidence, as well as preparing for witness direct examination. This is not unreasonable or unexpected and, as previously noted, Plaintiffs are not requesting the hourly rate for this work.

17. **6/9/2023:** Ms. Primavera, as a member of the Hearing team, needed to prepare for the Hearing. Gordon & Rees appropriately staffed this matter, and

the work of each attorney to prepare for the Hearing was not duplicative or worthy of reduction.

18. **6/8/2023:** Ms. Primavera, as a member of the Hearing team, needed to prepare for the Hearing. Gordon & Rees appropriately staffed this matter, and the work of each attorney to prepare for the Hearing was not duplicative or worthy of reduction.

19. **6/9/2023:** Ms. Kucine, as a member of the Hearing team, needed to prepare for the Hearing. Gordon & Rees appropriately staffed this matter, and the work of each attorney to prepare for the Hearing was not duplicative or worthy of reduction.

20. **6/9/2023:** Ms. Primavera, as a member of the Hearing team, needed to prepare for the Hearing. Gordon & Rees appropriately staffed this matter, and the work of each attorney to prepare for the Hearing was not duplicative or worthy of reduction.

21. **6/9/2023:** Ms. Primavera, as a member of the Hearing team, needed to prepare for the Hearing. Gordon & Rees appropriately staffed this matter, and the work of each attorney to prepare for the Hearing was not duplicative or worthy of reduction. Preparing for a hearing takes multiple days, and it is unreasonable to suggest otherwise.

22. **6/11/2023:** Ms. Kucine, as a member of the Hearing team, needed to prepare for the Hearing. Gordon & Rees appropriately staffed this matter, and the work of each attorney to prepare for the Hearing was not duplicative or worthy of reduction. Preparing for a hearing takes multiple days, and it is unreasonable to suggest otherwise.

23. **6/12/2023:** Ms. Kucine, as a member of the Hearing team, needed to prepare for the Hearing. Gordon & Rees appropriately staffed this matter, and the work of each attorney to prepare for the Hearing was not duplicative or worthy of reduction. Ms. Kucine's time entry, which details numerous substantive tasks and projects, accurately depicts the amount of time spent in preparation on that day, which is not an abnormal or improper length of time in the midst of an evidentiary hearing requiring significant exhibit, witness, and strategic preparations.

24. **6/12/2023:** Ms. Kucine, as a member of the Hearing team, needed to prepare for the Hearing. Gordon & Rees appropriately staffed this matter, and the work of each attorney to prepare for the Hearing was not duplicative or worthy of reduction. Ms. Primavera's work was not duplicative of Ms. Kucine's work, as it was necessary for these team members to collaborate on tasks to ensure adequate preparation.

25. **6/13/2023:** Ms. Kucine and Ms. Primavera both preparing for and attending the Hearing was necessary. Gordon & Rees appropriately staffed this matter, and the work of each attorney to prepare for and participate in the Hearing was not duplicative or worthy of reduction.

26. **6/26/2023:** Gordon & Rees appropriately staffed this matter, which involved preparing for and participating in a complex, evidence-heavy hearing on an extraordinarily expedited basis. The work of each attorney to prepare for and participate in the Hearing was not duplicative or worthy of reduction. Furthermore, the hourly rate for each attorney's attendance was not charged, nor is it requested now. No reduction is necessary.

27. **6/27/2023:** Please see the above explanation at "26" regarding the appropriate staffing on this matter.

### III. CONCLUSION

The record is clear that Plaintiffs are prevailing parties entitled to attorneys' fees with respect to the Hearing. All attorneys' fees and costs were reasonable, carefully documented, and have already been presented at a considerable discount.

As such, this Honorable Court should grant Plaintiffs' request for all available attorneys' fees, and for any other relief that this Honorable Court deems just and proper.

DATED AND SUBMITTED this 4th day of October, 2023.

**GORDON & REES**

By: */s/Mercedes Colwin*
Mercedes Colwin, Esq.
Brittany Primavera, Esq.
Lindsey Blackwell, Esq.
Hannah Kucine, Esq.
1 Battery Park Plaza, 28th Floor
New York, New York 10004
(212) 269-5500
mcolwin@grsm.com
bprimavera@grsm.com
lblackwell@grsm.com
hkucine@grsm.com
*Counsel for Plaintiffs DF Ventures, LLC and Daymond John*

TO: All Parties *via* ECF